

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re | Case No.: 18-00109 |
| | Chapter 11 |
| THE FILIPINO COMMUNITY CENTER, INC., | |
| Debtor. | Re: Docket. No: 120 |

## MEMORANDUM OF DECISION REGARDING CONTRACT REJECTION DAMAGES (PROOFS OF CLAIM NOS. 5 AND 7)

Epic Creations LLC dba Creations in Catering ("CIC") filed Proofs of Claim 5 and 7. Both claims seek damages based on the rejection of an executory contract. Debtor The Filipino Community Center, Inc. ("FilCom") objected to the claims. An evidentiary hearing on the objection was held on July 2 and 3, 2019. The parties filed post-hearing briefs. This memorandum contains my findings of fact and conclusions of law.

## I.     FACTUAL BACKGROUND

### A.     The Agreement

FilCom is a non-profit corporation that owns the FilCom Center in Waipahu. The center consists of a building that contains a ballroom, conference and meeting rooms, a music room, a courtyard, a commercial kitchen, and office space.

CIC and FilCom entered into an agreement effective as of August 1, 2014 (the "Agreement"). Briefly summarized, the Agreement made CIC the exclusive caterer for most events at the center and gave CIC the exclusive right to book events at the center and use the meeting facilities. It also gave CIC the exclusive right to use the commercial kitchen to prepare food for events at the center and elsewhere. In exchange for this exclusive right, CIC agreed to pay FilCom base and percentage rent.

### B.     The Arbitration

FilCom was disappointed with the income it received and with CIC's performance under the Agreement. FilCom gave notice of default and termination of the Agreement. This resulted in an arbitration before a retired justice of the Hawaii Supreme Court.

The arbitrator decided that CIC did not commit any material and substantial breach of the Agreement, that FilCom had committed several material and substantial breaches of the Agreement, and that FilCom's attempt to terminate the Agreement was improper.  Furthermore, the arbitrator held that the Agreement remained in full

U.S. Bankruptcy Court - Hawaii   #18-00109   Dkt # 233   Filed  09/27/19   Page 2 of 18

force and effect and awarded CIC damages. In particular, he determined that:

(1) FilCom breached the Agreement by renting Room 213, in the center, to another tenant in March 2016. This resulted in a net revenue loss to CIC of $1,591.82 per month, or a total of $27,060.94 to "present." The total award represents seventeen months of rent. Therefore, the "present" to which the arbitrator referred must be the time of the arbitration hearing on August 8 and 9, 2017, not the subsequent issuance of the arbitrator's decision on December 19, 2017. The arbitrator held that these damages would continue to accrue at $1,591.82 per month

unless and until one of two alternative events occur:

> a. Room 213 is returned to [CIC's] rental inventory, or
>
> b. FilCom allows [CIC] to rent the Ballroom on a half-Ballroom basis with a commensurate half-rental rate to allow [CIC] to compete for the smaller parties (75-100 people).[1]

(2) FilCom improperly denied CIC the use of certain office space at a special rental rate.

(3) FilCom failed to carry out certain obligations to maintain the center and was obligated to reimburse CIC for cleaning expenses of $2,426.17.

(4) FilCom overcharged CIC rent in the amount of $43,150.

(5) CIC was entitled to attorneys' fees and costs in the amount of $193.892.28.

---

[1] Final Award of Arbitrator at 17.

3

A state court confirmed the arbitration award by an order entered on February 16, 2018. The court recognized that CIC, post-arbitration, had withheld rent and other payments due to FilCom in the amount of $40,468.28. This reduced the net monetary award to $234,019.64 as of January 24, 2018.

Both parties acknowledge that the judgment on the arbitration award is binding and effective, although they disagree about its effect on the parties' claims.

### C.    FilCom's Bankruptcy Filing and Rejection of the Agreement

FilCom filed a voluntary chapter 11 petition on February 2, 2018.  FilCom immediately moved to reject the Agreement. The court granted the motion and denied CIC's motion for reconsideration. CIC vacated the center, although FilCom allowed CIC to complete certain events that it had booked before the rejection.

### D.    CIC's Claims

CIC filed two proofs of claim in FilCom's bankruptcy case. Proof of Claim 5 (as amended) is based on the arbitrator's award, updated to the date of rejection of the Agreement. Proof of Claim 7 (as amended) asserts a claim for lost future profits after the rejection.

## II.    LEGAL STANDARDS

### A.    Allowance of Claims

A claim set forth in a properly filed proof of claim is allowed unless a party in

interest objects.[2] Such a claim is presumptively valid.[3] An objector has the burden of presenting evidence sufficient to negate the prima facie validity of the claim.[4] If the objector carries that burden, the burdens of proof and persuasion shift, and the claimant must establish its claim by a preponderance of the evidence.[5]

FilCom carried its initial burden, so CIC bears the burdens of proof and persuasion.

A claim is allowed unless it is unenforceable under applicable nonbankruptcy law or if one of the exceptions to its allowance in section 502(b) applies.[6] None of those statutory exceptions applies here, so the issue is the amount of CIC's claim for damages under Hawaii law.[7]

## B. Rejection of the Agreement

A bankruptcy trustee (which includes FilCom, as the debtor in possession in a

---

[2] 11 U.S.C. § 502(a).

[3] Fed. R. Bankr. P. 3001(f).

[4] *Spencer v. Pugh (In re Pugh)*, 157 B.R. 898, 901 (B.A.P. 9th Cir. 1993).

[5] *Lundell v. Anchor Const. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1039 (9th Cir. 2000).

[6] *Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.*, 549 U.S. 443, 452 (2007).

[7] Section 31.0 of the Agreement specifies that Hawaii law governs. Such choice of law provisions are enforceable. *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 472 (1989).

5

chapter 11 case)[8] may reject any executory contract.[9] The Agreement is an "executory contract" within the meaning of the Bankruptcy Code.[10]

Rejection of an executory contract is treated as a breach of the contract that occurred immediately before the date of the bankruptcy petition.[11] Rejection "serves two purposes. It relieves the debtor of burdensome future obligations while he is trying to recover financially and it constitutes a breach of a contract which permits the other party to file a creditor's claim."[12]

Rejection does not terminate a contract, but it does constitute a breach by the debtor.[13] The non-breaching party retains its rights under the contract, though it can no longer demand specific performance. Instead, the non-breaching party obtains a pre-petition claim against the bankruptcy estate for damages resulting from the debtor's nonperformance.[14]

---

[8] 11 U.S.C. § 1107(a).

[9] 11 U.S.C. § 365(a).

[10] The arbitrator ruled that "[t]he August 1, 2014 Agreement between the parties remains in full force and effect." Under section 365 of the Bankruptcy Code, an executory contract is "a contract that neither party is finished performing." *Mission Product Holdings, Inc. v. Tempnology, LLC*, 139 S.Ct. 1652, 1657 (2019).

[11] 11 U.S.C. § 365(g)(1).

[12] *Dunkley v. Rega Properties, Ltd., (In re Rega Properties)*, 894 F.2d 1136, 1140 (9th Cir. 1990) (quoting *In re Norquist*, 43 B.R. 224, 225 (Bankr. E.D. Wash. 1984)).

[13] 11 U.S.C. § 365(g); *Mission Product Holdings*, 139 S.Ct. at1658.

[14] *Id.* at 1659-60.

### C.    Contract Damages

In determining the amount of a creditor's rejection damages claim, bankruptcy courts apply state law. State law controls both the construction of a contract and the question of whether it has been breached.[15] "[W]hether a given contract is 'executory' under the Bankruptcy Act is an issue of federal law . . . the question of the legal consequences of one party's failure to perform its remaining obligations under a contract is an issue of state contract law."[16]

### D.    Lost Profits

Under Hawaii law, someone that sustains a loss from a breach of contract is "entitled to [ ] just compensation commensurate with [that] loss."[17] This can include past losses and future profits. "Damages for lost profits cannot be determined by total gross revenues."[18] They are "measured by the loss of net profits, meaning net earnings . . . over expenditures."[19]  The net lost profits "do not necessarily have to be

---

[15] *Otto Preminger Films, Inc. v. Qintex Entm't, Inc. (In re Qintex Entm't, Inc.)*, 950 F.2d 1492, 1497 (9th Cir. 1991).

[16] *In re Rega Properties*, 894 F.2d at 1139 (quoting *Hall v. Perry (In re Cochise College Park, Inc.)*, 703 F.2d 1339, 1348 n.4 (9th Cir. 1983)).

[17] *Uyemura v. Wick*, 551 P.2d 171, 177 (Haw. 1976) (citing *Ferreira v. Honolulu Star-Bulletin*, 44 Haw. 567 (Haw. 1960)).

[18] *Omura v. American River Investors,* 894 P.2d 113, 115 (Haw. 1995) (quoting *Rainbow Island Prods., Ltd. v. Leong*, 351 P.2d 1089, 1093 (Haw. 1960)) (internal markings omitted).

[19] *Id.* (quoting *Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1024 (Colo. App. 1993)).

7

determined with mathematical certainty,"[20] but "the extent of loss must be shown with reasonable certainty and cannot be based upon mere speculation or guess."[21] "When the plaintiff has proven injury but has failed to prove the amount of damages, the plaintiff is only entitled to nominal damages."[22]

### E.    Preclusive Effect of Arbitration Award

Under Hawaii law, a judgment confirming an arbitration award has claim- and issue-preclusive effect.[23] Neither party challenges the judgment or contests this basic principle, although they disagree about the scope of its preclusive effect.

### F.    Attorneys' Fees

Under Hawaii law, a "prevailing party" is entitled to collect reasonable attorneys' fees in an action in assumpsit.[24] To determine the prevailing party in complex litigation, Hawaii courts ask which party prevailed on the "disputed main issue."[25] This requires the court to "first identify the principal issues raised by the pleadings and proof in a particular case, and then determine, on balance, which party

---

[20] *Id.*

[21] *Id.* (quoting *Azer v. Myers*, 793 P.2d 1189, 1213 (Haw. App. 1990)).

[22] *Id.* (citing *Ferreira*, 356 P.2d at 657).

[23] *Wailua Associates v. Aetna Cas. & Sur. Co.*, 27 F.Supp.2d 1211, 1218 (D. Haw. 1998); *Dorrance v. Lee*, 976 P.2d 904, 907 (Haw. 1999).

[24] Haw. Rev. Stat. (HRS) § 607-14; *see In re Hoopai*, 581 F.3d 1090, 1101-02 (9th Cir. 2009).

[25] *Food Pantry, Ltd. v. Waikiki Business Plaza, Inc.*, 575 P.2d 869, 879 (Haw. 1978).

8

prevailed on the issues."[26] Thus, the "prevailing party" is the one that succeeds on the principal issues raised in the litigation that are actually disputed by the parties.[27] A party that is only partially successful can still be deemed the prevailing party for the purpose of attorneys' fees.[28] This is true even where the trial court awards a plaintiff only "nominal damages."[29]

HRS section 607-14 gives courts some discretion to determine the proper amount of fees to award in an action in assumpsit. Under the statute, "attorneys' fees . . . are not presumptive and do not require an 'adequate explanation' by the court."[30] While the statute does not require the court to give "a detailed explanation of the rationale underlying the reduction in attorneys' fees[,]" "the denial or reduction of attorneys' fees must have support in the record."[31]

## III. ANALYSIS OF CLAIM 5.

Proof of Claim 5 asserts that FilCom owes CIC the following amounts:

---

[26] *Id.*

[27] *In re Hoopai*, 581 F.3d at 1102.

[28] *Id.*; 10 CHARLES ALAN WRIGHT & ARTHUR P. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2667 (4th ed. 2019).

[29] *MFD Partners v. Murphy*, 850 P.2d 713, 715-16 (Haw. App. 1992); *accord Three-Seventy Leasing Corp. v. Ampex Corp.*, 528 F.2d 993, 998 (5th Cir. 1976).

[30] *Ranger Ins. Co. v. Hinshaw*, 79 P.3d 119, 126 (Haw. 2003) (quoting *Finley v. Home Ins. Co.*, 975 P.2d 1145, 1159 (Haw. 1998)).

[31] *Id.* (internal quotations omitted).

U.S. Bankruptcy Court - Hawaii   #18-00109   Dkt # 233   Filed  09/27/19   Page 9 of 18

| Page(s) | Description | Amount |
|---------|------------|--------|
| 7 | Investment in FilCom § 40.2c Agreement | $84,000.00 |
| 11-12 | Award in Arbitration (rent for Room 213, March 2016 to August 2017) | $27,060.00 |
| 11-12 | Rent of Room 213 at $1,591 per month (from September 2017 to July 2021) | $74,777.00 |
| 14-15 | Section 40.1(a) Maintenance Expense | $2,426.00 |
| 16 | Overcharged Rent | $43,150.00 |
| 19 | Attorney's Fees as per Arbitration Award | $193,892.00 |
| | Security Deposit (as per Agreement) | $5,000.00 |
| | Attorneys' Fees as per Agreement 26.3 (Damages) and § 605-14, H.R.S. [in an amount to be determined] | *To be determined after litigation* |
| | **Total Arbitration Award** | **$430,305.00** |

The proof of claim suggests that the arbitrator awarded all of these amounts. This is not completely accurate. The arbitrator awarded some of the amounts; CIC adjusted other amounts; and still others were not awarded at all.

### A.    The Investment Component

The first component of this claim (the "Investment Component") is based on section 40.2c of the Agreement, which provides that CIC:

> shall, with eighteen (18) months after the Commencement Date, make a one time initial investment of $70,000 to purchase additional banquet equipment and other upgrades as need to bring the banquet equipment up to CIC's standards and shall have the sole discretionary right to invest

U.S. Bankruptcy Court - Hawaii   #18-00109   Dkt # 233   Filed  09/27/19   Page 10 of 18

a part of this $70,000 to Capital Improvements to the Catered Facilities or kitchen equipment . . . .

Contrary to the implication of the proof of claim, the arbitrator did not award CIC any amounts in respect of its investment. Rather, the arbitrator only ruled that CIC did not breach the provision of the Agreement that required it to make an investment.[32] Therefore, one must look further to determine whether CIC is entitled to recover the Investment Component.

Section 25.1 of the Agreement provides, in relevant part, that:

> If [FilCom] defaults, CIC shall have [sic] shall be entitled to terminate this Agreement, recoup from [FilCom] any monies expended by CIC to upgrade the facilities, and those kitchen equipment and banquet equipment that remain with [FilCom], less straight line depreciation . . . .

CIC provided a list of the expenditures for which it seeks reimbursement.[33] Most of the expenditures were for "kitchen equipment and banquet equipment;" only a few[34] were for more permanent items that could be viewed as an "upgrade [of] the facilities." These latter expenditures totaled $11,492.88. Of the "kitchen equipment and banquet equipment," the evidence showed that the only item that "remain[ed]

---

[32] Claim 5-2 at 13.

[33] CIC exhibit 217.

[34] $1,058.68 spent on 09/25/2013 to "Build office for chef," $2,200 spent on 10/14/2014 for a Fujitsu air conditioner, $5,000 spent on 10/28/2014 for electrical work for the new office, and $3,234.20 spent on 03/08/2016 for "Build out in Op's office."

11

with FilCom" after the termination was a Robot Coupe mixer for which CIC paid $782.05 (including shipping) on October 15, 2015. Therefore, the total expenditures of CIC that qualify under section 25.1 are $12,274.93.

Based on the contract terms, this amount must be reduced by the "straight line depreciation" method.[35] CIC completely ignores this provision. FilCom contends that, when calculating the investment damages, the court should use a seven-year depreciation period. I find FilCom's position reasonable given that CIC's tax returns suggest that it adopted five- and seven-year depreciation periods for most of its depreciable property.[36] Based on a rough approximation of straight line depreciation, I will reduce the Investment Component of the claim by half, to $6,138.00.

## B.    The Room 213 Component

The arbitrator ruled that FilCom had wrongfully deprived CIC of the use of Room 213 and awarded "$27,060.94 in lost net revenues from March 2016 (the rental date) to present, at the rate of $1,591. 82 per month," and continuing until one of two events occurred (the "Room 213 Component"). The arbitrator's award

---

[35] "Straight line depreciation is a method which provides for an equal and constant annual charge representing depreciation or loss of property consumed in operation." *In re Establishing Rate Base for Honolulu Gas Co.*, 33 Haw. 487, *1 (1935).

[36] Choosing the longer period benefits CIC, even though CIC has the burden of proof and persuasion. Indeed, CIC's failure to offer any evidence or argument concerning the depreciation issue could be treated as a failure of CIC to carry its burden of proof. If my "rough and ready" estimate of depreciation is impermissible, I would award CIC nothing in respect of the Investment Component.

amounts to seventeen months of lost net revenues, so it includes the damages to August 2017.

Based on the evidence, I find that FilCom allowed CIC to rent the Ballroom on a half-Ballroom basis at a half-rental rate by October 2017 at the latest. Therefore, CIC is entitled to an additional $4,775.46, representing three months of lost net revenues (in addition to the $27,060.94 awarded by the arbitrator), concerning the Room 213 Component.

CIC argues that the Room 213 Component should include lost net revenues for the entire remaining term of the Agreement. I disagree. CIC's damages for the post-termination period are its aggregate net profit. CIC should not be awarded net revenues for just one component of its business in isolation from the results of its overall business.

## C. Uncontested Components

FilCom does not contest CIC's claims for section 40.1(a) maintenance expenses in the amount of $2,426.00, overcharged rent awarded by the arbitrator in the amount of $43,150.00, attorneys' fees in the amount of $193,892.00, and the $5,000 security deposit. Except for the security deposit, all of the uncontested amounts are included in the judgment on the arbitration award.

U.S. Bankruptcy Court - Hawaii   #18-00109   Dkt # 233   Filed  09/27/19   Page 13 of 18

### D.    FilCom's Claimed Offset for Unpaid Base Rent

FilCom argues that CIC is obligated to pay base rent from March 2018, when FilCom rejected the Agreement, until October 2018, when CIC catered its last event at the center.

FilCom correctly points out that rejection is a breach of an executory contract but does not terminate the contract. This is true as far as it goes. But Filcom ignores the fact that, in this case, the Agreement was in fact terminated. At FilCom's insistence, CIC lost its status as the exclusive caterer at the center and vacated the kitchen and other portions of the premises. Both parties stopped performing their obligations under the Agreement. Therefore, the rejection of the Agreement resulted in its termination.

FilCom's argument also ignores section 25.2.2 of the Agreement, which provides that CIC would have a 180-day grace period after termination or expiration of the Agreement to cater events that were booked before the termination or expiration.[37] No provision of the Agreement requires CIC to pay base rent during the grace period. If anything, the language of the Agreement suggests that CIC is not

---

[37] "**25.2.2 Effect of Termination or Expiration of Existing Catering Agreements.** The parties agree that termination or expiration shall not affect executing catering agreements with clients existing at the date of termination or expiration and CIC shall have one hundred eighty (180) day grace period from the date of termination or expiration during which time CIC may continue to provide a catering services at the Catered Facilities for Events and functions that were under contract before the date of termination or expiration."

liable for rent during the grace period; section 4.1 provides that CIC must pay rent "during the term of this Agreement," and not after its termination.[38]

Based on the evidence, I find that the Agreement was terminated in April 2018 and CIC was required to pay rent up until that time period. I find that (1) CIC paid all required rent through February 2018, (2) CIC should have paid base rent of $5,000.00 per month for March and April 2018, but (3) instead, CIC paid only $1,000.00 for March and $500.00 for April 2018. Filcom is entitled to an offset for unpaid base rent accruing to and including the month of April 2018, but not any subsequent months, minus the partial rental payments made by CIC. Thus, the amount of Filcom's offset is $8,500.00.

### E. FilCom's Claimed Offset for Maintenance Expenses

FilCom argues that CIC's claim should be also be reduced by $2,744.00, which is the amount FilCom paid to clean the range hoods and pump out the grease trap after the Agreement was terminated. CIC does not deny that section 3.8 of the Agreement required it to clean the range hood and pump the grease trap. CIC offers no evidence that it did either of these things, and it does not challenge the reasonableness of the amounts that FilCom paid for those purposes. Rather, CIC argues that FilCom waived this claim by failing to raise it in the arbitration or before

---

[38] "**4.1 Rental**. During the term of this Agreement, CIC shall pay [Filcom] the following rentals . . .."

FilCom was contractually obligated to return CIC's security deposit.

Based on the evidence, I find that FilCom did not know, and could not have reasonably discovered, that CIC failed properly to clean the range hoods or pump the grease trap until August 2018. Therefore, FilCom has not waived its claim and the amount of Filcom's additional offset is $2,744.00.

### F.    Summary of Claim 5

I will allow Claim 5 in the following amount:

| | |
|---|---|
| Judgment on arbitration award | $234,019.64 |
| PLUS Investment Component | 6,138.00 |
| PLUS additional Room 213 net revenues | 4,775.46 |
| PLUS security deposit | 5,000.00 |
| MINUS base rent offset | -8,500.00 |
| MINUS maintenance expense offset | -2,744.00 |
| **TOTAL** | **$238,689.10** |

## IV.   ANALYSIS OF PROOF OF CLAIM 7

Proof of Claim 7 seeks lost profits damages in the amount of $362,000.00.

Based on the evidence, I find that CIC has failed to prove its lost profits with the requisite degree of certainty.

CIC's business was generally unprofitable except for a brief period while the Agreement was in effect. But even those profits were somewhat illusory because they

U.S. Bankruptcy Court - Hawaii   #18-00109   Dkt # 233   Filed  09/27/19   Page 16 of 18

were achieved partly because its principal, Michael Rabe, and his family dramatically reduced their salaries to unsustainably low levels.

At least two factors make it highly unlikely that CIC could have maintained even those levels of profit.

First, as Mr. Rabe testified, the improvement in CIC's fortunes was attributable in large part to its recruitment of a new chef and general manager who ran its day-to-day operations. But that chef left CIC's employ in March 2018, so CIC lost the benefit of his services. The rejection of the Agreement probably contributed to the chef's decision to quit. But regardless of why he quit, the fact that CIC's profitability was so dependent on the services of a single, non-owner employee makes CIC's prediction of lost profits too speculative to support an award of damages.

Second, CIC's success depends crucially on the availability of Michael Rabe. In his words, "CIC was Michael Rabe. . . . I was the only one who had the experience and expertise to drive sales . . . ." Sadly, Mr. Rabe suffered a stroke on May 19, 2018, after the Agreement was rejected. Judging from his performance on the witness stand, he has made a complete recovery, but the dependence of the business on his personal involvement coupled with his health challenges in the recent past also calls into question the reliability of CIC's future profits.

Therefore, claim 7 will be disallowed in its entirety.

U.S. Bankruptcy Court - Hawaii   #18-00109   Dkt # 233   Filed  09/27/19   Page 17 of 18

## IV.    ATTORNEYS' FEES

I conclude that FilCom has prevailed on the "disputed main issue" in this contested matter. The only question presented was the amount of CIC's claim. My award ($238,689.10) is substantially less than the total amount sought in CIC's amended proofs of claim ($792,305.00). But this is hardly a complete victory for FilCom: my award is also larger than the amount that FilCom did not dispute ($227,925.07). I will permit FilCom to file a motion for an award of attorneys' fees and costs, but FilCom is cautioned that its limited success will be relevant in determining the reasonable amount of its fees and costs.

END OF MEMORANDUM DECISION

U.S. Bankruptcy Court - Hawaii   #18-00109   Dkt # 233   Filed  09/27/19   Page 18 of 18